MIRIAM McGINNIS, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF DAVID D. McGINNIS, DECEASED, v. CARL E. ROLF AND LETHA ROLF. 189 S. W. (2d) 456.

Kansas City Court of Appeals. May 21, 1945.

*Gerlash· & Gerlash* and *C. B. DuBois* for appellant.

56

*Brown, Douglas* and *Brown R. L. Douglas* for respondents.

DEW, J.—This is an action brought by the appellant to recover on a promissory note of respondents. A jury having been waived, and the cause having been heard by the court sitting as a jury, the court made the Declaration of Law that "Under the stipulated facts the

court declares the law to be that the note sued on is without considera-
tion, and that the plaintiff is not entitled to recover.'' Judgment was
rendered for defendants accordingly. Plaintiff appealed.

Plaintiff's petition is in conventional form. It stated that on March
6, 1943, David D. McGinnis died and on March 22, 1943, letters testa-
mentary were issued to the plaintiff herein by the Probate Court of
Atchison County, Missouri, and that she is now the legally appointed,
duly qualified and acting executrix of the estate of said deceased.
The petition further alleged execution and delivery by the defendants
of their joint promissory note dated August 27, 1935, payable to
David D. McGinnis, under the name of D. D. McGinnis, due one year
after date of said note, in the sum of $1410, with interest at 6 per cent
from date, interest payable annually, and, if not paid, to be added to
the principal and to bear the same rate of interest. It is alleged that
the note contained certain provisions as to notice of nonpayment,
waiver of presentment, and provided that in case the note shall not
be paid at maturity and the same be placed in the hands of an attorney
for collection, the makers will pay an attorney's fee of 10 per cent
of the principal and interest then remaining unpaid. It is alleged
that the note has long since matured and no part of same or the at-
torney's fee has been paid; that it has been placed in the hands of
John A. Gerlash and John M. Gerlash for collection, and that the prin-
cipal, interest and attorney's fee are now due and unpaid. Judgment
is prayed for $1410, with interest thereon at 6 per cent per annum
from August 27, 1935, to be compounded annually, and for $221
attorney fees, and costs.

In defendants' answer it is admitted that David D. McGinnis is
deceased; that plaintiff is the duly appointed and acting executrix of
his estate; that defendants signed the note described in plaintiff's
petition, and each and every other allegation of said petition is denied.
Further answering, defendants alleged that said note is void and
does not constitute any obligation of the defendants to the said David
D. McGinnis or his personal representative for the reason that it is
not supported by any consideration, and by reason thereof is not
enforceable; that the defendants were not indebted to said McGinnis on
August 27, 1935, nor did the said McGinnis or anyone for him pay or
furnish any consideration for the execution of the instrument sued
on.

The reply was a general denial.

Filed with the petition is the note described in plaintiff's petition.

The facts in the case were agreed upon by stipulation of the parties,
and, in substance as so agreed, are as follows:

On April 27, 1929, David D. McGinnis, now deceased, loaned to
defendant Carl E. Rolf, $6500. In consideration of the above loan, a
note for that amount, payable to David D. McGinnis, bearing the above
date, was signed by Carl E. Rolf, as principal, together with his then

wife, Verna C. Rolf, and signed by his sisters as sureties thereon, to-wit: Hilda R. Rolf, Anna A. Rolf, Mabel C. Rolf and Johanna Ebert, with her husband Carl Ebert. This note, so executed, was thereupon delivered to David D. McGinnis.

As security for the payment of the last above described note a deed of trust of even date was executed and delivered to said McGinnis, signed by defendant Carl E. Rolf, as principal, with his then wife Verna C. Rolf, joining him therein, and by his said sisters and Carl Ebert, above named, as sureties, by agreement between defendant Carl E. Rolf and his said sisters, known to said McGinnis. The deed of trust covered two tracts of land in Atchison County, Missouri, one of which can be conveniently referred to herein as in Section 5, and the other as in Section 7. It was stated in the deed of trust that it was to be a first lien on the tract in Section 5, in which all the children of August W. Rolf were interested. The defendant Carl E. Rolf was interested jointly with his sisters in said tract. As to the tract in Section 7, the deed of trust provided that it was to be a second lien thereon, and that Carl E. Rolf was the sole owner of such tract, subject to $28,000 prior encumbrance thereon. This deed of trust was duly delivered and the same was recorded on May 6, 1929.

The proceeds of the above $6500 loan were paid by David D. McGinnis to defendant Carl E. Rolf.

On February 17, 1934, all of the above signers of said $6500 note and deed of trust securing same, signed and addressed a letter to David McGinnis to the effect that as owners of the tract described in said deed of trust as lying in Section 5, held by him, they requested him to release the land described in said deed of trust lying in Section 7, retaining that part of the land in Section 5. This request was made in order that defendant Carl E. Rolf could renew the first mortgage lien on Section 7 to which the $6500 lien and deed of trust were subject, which first mortgage indebtedness was in default, and about to be foreclosed. Pursuant to that request a partial release of the $6500 deed of trust was executed to permit Carl E. Rolf to refinance his prior loans on his said individual tract in Section 7, which tract was thereupon released.

Thereafter, on July 19, 1935, defendant Carl E. Rolf conveyed to his sisters, who were sureties on his $6500 note and deed of trust described, all of his undivided interest in Section 5, whereupon they became the owners thereof and defendant Carl E. Rolf had no further interest in Section 5, which was the only property then left securing the $6500 mortgage note held by David D. McGinnis.

In June, 1935, the $6500 note became in default, both as to principal and interest. In order to refinance the encumbrance upon their property in Section 5, the sisters of Carl E. Rolf applied to the Federal Land Bank for a Refinancing loan, making the application through George C. Nicoll, local representative at Tarkio, Missouri, of the Fed-

eral Land Bank. Pursuant to the application, said Nicoll submitted to D. D. McGinnis a request for "Creditor's Statement of Indebtedness and Authority for Payment." The substance of this statement was as follows: The applicant is designated as Hilda R. Rolf. It is admitted that the application was in behalf of all the sisters of defendant Carl E. Rolf, named above. It was addressed to D. D. McGinnis, creditor, at Tarkio, Missouri. It advised him that he held a note as an obligation of "Hilda R. Rolf, et al., Westboro, Missouri for $——." Request was made that McGinnis state on the form appearing below the above communication, the earliest date the indebtedness could be paid, together with the amount which the addressee would accept in full satisfaction of the same on or before said date, or thereafter, and that the statement be returned to the writer.

The form following the above communication is addressed to G. C. Nicoll, Secretary-Treasurer or Loan Correspondent and to the Federal Land Bank of St. Louis and/or Land Bank Commissioner. It was signed "D. D. McGinnis" and dated July 17, 1935. The amount of indebtedness was given thereon as $6500, as unpaid principal, and $—— unpaid interest; that the indebtedness was evidenced by a note secured by real estate mortgage. The date to which the interest was paid, the date on which the note was due, and the date and page of the recording of the instrument were not filled in. It was stated therein that upon payment to the undersigned of $6100 on or before August 15, 1935, or if paid thereafter by including interest at the rate of —— percentum per annum on $—— from said date to the date of payment, said sum would be accepted in full satisfaction of "this claim." The form contains further statements that the writer held insurance covering the buildings that would be delivered to the addressee when release or other papers connected with the said indebtedness were delivered to the addressee. Among other provisions of said form signed by D. D. McGinnis was the following: "The undersigned creditor states that no understanding or agreement exists between him *and the applicant* that a note or other evidence of indebtedness will be given for the difference, if any, between the amount paid or to be paid the creditor and the amount of the creditor's original claim, and agrees that directly or indirectly no note mortgage or other consideration will be received *from the debtor*, incident to such acceptance, other than the consideration paid by the Federal Land Bank and/or the Land Bank Commissioner, and that when said consideration is paid all claims of this creditor *against the above named debtor* shall have been satisfied in full." (Italics supplied.)

The form further contained a statement that all papers evidencing the indebtedness, properly endorsed, and with proper release, would be delivered to the Land Bank Commissioner in exchange for a receipt for same, evidencing the amount to be paid to the undersigned from the proceeds of said loan.

The $1410 note sued on was executed and delivered to David D. McGinnis by the defendant Carl E. Rolf and his present wife, defendant Letha Rolf in an agreed "compromise settlement" of the balance due David D. McGinnis on the said $6500 note.

Before delivering to Mr. Nicoll the papers pertaining to the $6500 mortgage, David D. McGinnis caused his daughter (the same person as was later appointed his executrix and now plaintiff herein) to make a copy in his day book of the $6500 note which he was surrendering, in which book he customarily recorded entries of his business transactions, together with the calculation of the loss of principal and interest sustained by him in accepting the compromise amount of $6100 from proceeds of the Federal Land Bank loan, and the note sued on herein. Following the memorandum copy of the $6500 note, shown in the day book of McGinnis, appears the interest payments as they are shown on the back of the $6500 note and following those items there appears in the said day book the following computation:

"August 26

| | |
|---|---|
| Interest on note | $3883.41 |
| Arrangement made by | |
| Carl Rolf to pay .04% flat | 1010.16 |
| | |
| Loss of interest | 2873.25 |
| Received Carl Rolf note | 400.00 |
| Less principal | |
| Interest | 1010.16 |
| | |
| Total | 1410.16 |

Signing note and mortgage to Geo. Nicoll today."

The application of Hilda Rolf and her sisters, together with Carl Ebert, husband of Johnanna Ebert, to the Federal Land Bank for a loan on their land in Section 5 was approved by the Federal Land Bank in the sum of $6100, which sum was paid by said Federal Land Bank to David D. McGinnis. The latter then endorsed the said $6500 note for release without recourse as shown on the back thereof, and delivered said note, so endorsed, to George C. Nicoll for release of record; whereupon Nicoll then delivered said note to the abstracter at Rockport, Missouri, who had the release of the deed of trust made on the margin of the records and the note was canceled on its face, by the recorder of Atchison County, Missouri.

As to the sequence of the transactions mentioned pertaining to the making of the Federal loan and payment and release of the $6500 encumbrance, and the purpose and intent of the defendants and McGinnis respecting the present note sued on, the parties herein, in their stipulation, agreed as follows: "That *at the time* said D. D. McGinnis accepted said $6100.00 payment on said $6500.00 note, *and as a part of the same transaction,* defendants, Carl E. Rolf and Letha

Rolf, his present wife, made, executed and delivered to said David D. McGinnis the note in suit in the sum of $1410.00, shown as *the amount due said David D. McGinnis in compromise and settlement with Carl E. Rolf, the principal debtor in said note, as shown by the said memoranda in said day book, and the said David D. McGinnis accepted said $1410.00 note in compromise settlement of the balance due him from said Carl E. Rolf, and made release of said deed of trust securing said $6500.00 note and thereupon surrendered said $6500.00 note."* (Italics supplied.)

In closing the transaction McGinnis executed and delivered to the Federal Land Bank a letter on form provided by the bank, to the effect that the writer was enclosing therewith note for $6500, dated April 27, 1929, maturing on October 27, 1929, executed by Hilda R. Rolf, et al., and mortgage securing same, with endorsement in proper form. This letter further stated that the writer understood that upon the closing of the loan from the Federal Land of St. Louis, for which application had been made by the above named applicant, cash in the sum of $6100, with no interest would be paid to the writer from the proceeds of said loan, and that the above described mortgage thereupon be released of record. Following the letter there is shown a receipt from George C. Nicoll of the instruments referred to.

Frequent demands were made by Miriam McGinnis for the payment of the $1410 note herein sued upon, and the note was finally placed in the hands of Gerlash and Gerlash for collection. On about the 25th of March, 1943, in the public road in front of the home of Carl E. Rolf, Miriam McGinnis, now the executrix of the estate of David D. McGinnis, deceased, together with other relatives of the family, had with them the McGinnis day book which showed the transactions involving the $1410, note sued on. These records were exhibited to Carl E. Rolf. He then stated that the entry was correct; that he had signed such a note, but that if he had to pay it, he would have to have further time. He did not deny that he owed the note, but wanted to discount it. He said that at that time he had one hundred or more cattle soon to be sold. Miriam McGinnis told him that she could not discount the note. She also presented to him a $200 note payable to said McGinnis and signed by Carl E. Rolf. She did not at the time have the $1410 note with her. Mr. Rolf said he would come down and see these parties again in two or three weeks. Several weeks thereafter Miriam McGinnis was in a store in Tarkio and saw defendant Carl E. Rolf come to the door and look in, and upon seeing her, turned and left without entering the store, and has never seen the plaintiff about the note except as above stated.

John A. Gerlash, attorney, later wrote defendant Carl E. Rolf about the $200 note and the $1410 note. About May 25, 1943, defendant Carl E. Rolf came to see Mr. Gerlash in regard to these notes. He complained about the 8 per cent interest on the $200

note and wanted to discount it. Mr. Gerlash informed Mr. Rolf that he thought that if he (Rolf) would pay both notes that maybe some discount could be allowed; that permission would have to be obtained therefor from the Probate Court. At that time Mr. Rolf wanted to know where the $1410 note was. Mr. Gerlash informed him that it was temporarily misplaced. Thereupon Mr. Rolf said he did not think David D. McGinnis intended for him to pay that note and said he thought Mr. McGinnis had destroyed it; that Mr. McGinnis had told him when the note was given that Rolf would not have to pay the note unless he was able to do so. Mr. Gerlash replied that Rolf was able to pay the note. Mr. Rolf then stated that he had another note in the same condition as that one, and if he had to pay the $1410 McGinnis note, he would have to pay the other note, and was not able to pay both. Before leaving this conference, Mr. Rolf paid the $200 note, with interest.

A few days thereafter the $1410 note sued on was found, and Mr. Gerlash wrote Mr. Rolf about May 27, 1943, that it had been found and requested that he come in and settle it. Mr. Rolf called upon Mr. Gerlash, looked at the note, but did not pay it, nor did he deny owing it; thereafter the suit was filed.

At the request of the defendants the trial court gave the following Conclusion of Law:

"Under the stipulated facts the Court declares the law to be that the note sued on is without consideration, and that the plaintiff is not entitled to recover."

The court refused a Declaration of Law that the note was void, and defendants withdrew their requested declaration to the effect that the payment of $6100 by the Federal Land Bank to D. D. McGinnis was a valid satisfaction of the entire indebtedness then owing by the defendants and their sureties, binding on the plaintiff herein, and that the note sued on was without consideration and void as against public policy.

It will be noted that the judgment of the trial court is based solely upon a finding that under the stipulated facts the note sued on is without consideration. The grounds for the conclusion of the court are not shown, either by the Declarations and Conclusions of Law or by the judgment entry.

There are several well established principles of law which should be borne in mind from the outset. The note sued on imports a valid consideration. Section 3345, R. S. Mo., 1939. Introduction of the note in evidence made a *prima facie* case and the burden was then on the defendants to show lack of consideration. Kingman v. Donnell, 271 S. W. 535. The payee in a note jointly executed by several makers may compound with and release one or more other makers without impairing his right to collect the balance from the remaining maker or makers. [Section 3348, R. S. Mo., 1939.]

The theory of the defendants (respondents) as disclosed by their brief, is that when David D. McGinnis agreed with the Federal Land Bank to accept the proceeds of the proposed loan to Carl E. Rolf's sisters, $6100, in full satisfaction of the then existing $6500 mortgage indebtedness against the property of the sisters (the applicants) on which the new Federal loan was to be secured, he (McGinnis) thereby effected a full accord and satisfaction of the liability of all the signers of the $6500 mortgage note, including the defendant Carl E. Rolf; that in consequence thereof, the latter then owed nothing to David D. McGinnis, and no consideration existed for the note of $1410 sued on, executed by Carl E. Rolf and present wife, payable to said McGinnis. Defendants contend further that the taking of such note by McGinnis was in violation of his agreement with the Federal Land Bank as to receiving any deficiency payment, contrary to public policy, and a violation of the Federal Farm Loan Act, 12 U. S. C. A., Section 1016, et seq.

Plaintiff contends that, under the stipulated facts, the Federal Land Bank could not, under the law, and did not, make the new loan of $6100 to the sisters of Carl E. Rolf for the benefit and release of Carl E. Rolf; that there was no accord and satisfaction in fact and that such an issue is not pleaded in the answer; that there was no contract between McGinnis and Carl E. Rolf to release Carl E. Rolf on the note sued on; that the defendants were not parties to the contract with the Land Bank, and the contract with the sureties was not for the benefit of the defendants. Plaintiff contends further that McGinnis had a right to compound and accept partial payment of the $6500 note without releasing defendants on the balance; that the compromise of a doubtful claim was a sufficient consideration for the note sued on, as was also the forbearance to sue on the $6500 note.

Let us consider the state of the facts when the note sued on was given. The land of defendant Carl E. Rolf had been released from the deed of trust securing the $6500 note. Only the land of his sureties (sisters) remained as security therefor. As to the latter tract he had conveyed to his sisters his undivided interest therein. He had thereby been enabled to refinance $28,000 in first mortgage liens on his land so released. However, he and his sisters were still liable on the $6500 note which they had all signed. The sisters, now owning all of the tract in Section 5 which, as stated, was the only property remaining in the deed of trust as security for the $6500 note, desired to refinance that encumbrance which was now in default. The sisters, sole owners of the land, and they alone, made application to the Federal Land Bank for a new loan.

On July 17, 1935, David D. McGinnis, in answer to a formal written inquiry from the agent of the Federal Land Bank, making reference to said application, signed a printed instrument wherein he agreed to accept $6100, the proceeds of the proposed new loan to the applicants,

in full satisfaction of the $6500 mortgage indebtedness aforesaid, if paid by August 15, 1935, agreeing therein that upon receipt of same it would be accepted in full satisfaction ''of this claim,'' and ''all claims of this creditor against *the above named debtor* will have been satisfied in full.'' (Italics supplied.) He agreed therein, when such payments were made, to deliver all papers pertaining to his claim, properly endorsed, with proper release, which was done. As a part of the whole transaction, according to the stipulation of facts, the note sued on for $1410 was given to McGinnis by Carl E. Rolf and present wife for the balance due on the $6500 note.

As noted, the parties herein have stipulated that the giving by the defendants of their note for $1410, sued on, and the acceptance thereof by McGinnis constituted a ''compromise and settlement'' of the amount remaining ''due'' McGinnis on the $6500 note. In their brief defendants now insist that the transaction constituted an accord and satisfaction of the amount unpaid on the $6500 note. This is an affirmative defense and should have been specially pleaded. [Crouch v. Quigley, 258 Mo. 651, 167 S. W. 978.] It is not pleaded in the answer, unless it can be considered so by the conclusions alleged or the inferences therefrom. But the case having been submitted on an agreed statement of facts, no occasion arose for this defense to have been indicated or objection thereto timely made in the record. In the state of the record before us, however, we shall regard the issue as before the court.

However, the distinction between compromise and settlement, and accord and satisfaction, is now regarded by most courts and authorities as slight, and the terms are often used interchangeably. [1 C. J. C. Section 1 (b) (4), page 465; Chapman v. Andrews, 204 Mo. App. 659, 219 S. W. 132.] Just as in the latter, a satisfaction must follow an accord to be complete, so in the former, a settlement must follow a compromise to become effective. Whether in this case there was an accord or compromise, the parties have stipulated that the subject-matter and the amount arrived at were the balance ''due David D. McGinnis'' on the $6500 note, and that the note sued on was made and accepted in fulfillment and completion of such adjustment. When so completed by agreement, payment and acceptance, further action on the original claim is barred. But this does not mean that when, in the payment of the amount so reached by accord or compromise, a new note is taken as such payment, upon surrender and cancellation of the evidence of the original claim, that the new note so received is without consideration. Cancellation and surrender of the old note by the payee and holder thereof to the maker is a good consideration for the new note when so accepted by the creditor. [Slover v. Rock, 96 Mo. App. 335, 70 S. W. 268.] So much of the $6500 note as McGinnis did not receive from the proceeds of the Federal Land Bank loan to Rolf's sisters ($400 principal, plus interest) was a good con-

sideration for the note sued on, upon acceptance thereof and the release, cancellation and surrender of the McGinnis $6500 note.

The agreement between David D. McGinnis and the Federal Land Bank to accept $6100 of the proceeds of the proposed loan to the sisters of Carl E. Rolf on their separate property, in satisfaction of the $6500 indebtedness then a lien against said property, was, under the stipulation of the parties hereto, only a part of one entire transaction, and would not discharge Carl E. Rolf's liability on his $1410 note made as a part of said transaction. The liability of Carl E. Rolf on the $6500 note itself was, of course, released, but only upon the contemporaneous agreement for the substitution therefor, and as a part of the same transaction, of said Rolf's new note here sued on for the balance unpaid. There could have been no other purpose, intent or effect as plainly disclosed by the agreed facts.

In addition to the consideration above discussed, there evidently were other mutual considerations for the note sued on. The $6500 note held by David D. McGinnis was past due and unpaid, and the security therefor had been reduced to the property in Section 5, then owned solely by the sisters of defendant Carl E. Rolf. By the proposed arrangement McGinnis was assured of getting all but $400 of the principal of his note ($6100) presently in cash, and without foreclosure, and without possible suit against the makers of the note for any deficiency. By the taking of the note sued on he would still retain the separate liability of Carl E. Rolf on the remaining amount of the original indebtedness. On the part of Carl E. Rolf, the giving of the note sued on, as a part of the entire transaction, enabled him to be released of his joint liability for the full amount of $6500 on the original note and become obligated for the payment only of the small remainder of the principal with adjusted interest. His status was thereby changed from debtor on a past due note, to that of debtor on a new note, in a much smaller amount, payable a year from its date, and with interest at 6 per cent as against 8 per cent on the old indebtedness. Other mutual considerations accruing to both Rolf and McGinnis by the transaction may reasonably be inferred.

But defendants herein contend further that the consideration of the note sued on is void because, in accepting the note, David D. McGinnis violated the representations made in writing to the Federal Land Bank that no other note or obligation of the *debtor* would be received, after receipt of the $6100, the proceeds of the proposed loan to the applicants. It is claimed that McGinnis thus violated the Federal Land Bank Act, making the consideration of the new note from Carl E. Rolf void and contrary to public policy. The statute in question provides for loans to farmers on farm property, and provides that no loan shall be made unless the holder of any prior mortgage shall arrange to the satisfaction of the commissioner "to limit his right to proceed against the farmer and such farm property

for default in payment of principal." [12 U. S. C. A., page 359, Section 1016(d).] It has been held that violation of such agreements invalidate obligations directly or indirectly taken thereunder contrary to the agreement of the prior mortgage holder. The purpose of this law has been held to be twofold. First, it is the purpose of the Federal Land Bank to protect its own financial position as a new creditor of the farmer under such "scale down" agreements and not to permit the precarious financial condition or credit structure being dealt with to be continued or re-established by obligations of the borrower of which the bank has no knowledge. Secondly, it is the purpose of the act to make it possible for the farmer to continue operations on his farm and to obtain real benefits from the "scale down" agreement and loan. If outstanding obligations or future commitments, made directly or indirectly, that would tend to put the farmer making such a loan back in his original financial straits, he would be no better off than if he had not received the assistance of the loan. [O'Neil v. Johnson, 29 Fed. Supp. 307.]

In the case at bar it will be noted that Carl E. Rolf was not the applicant for the bank loan; that he was to receive no part of the proceeds thereof; that the "debtor" referred to in the signed statement of McGinnis to the commissioner was, on the face of the statement, the applicants, to-wit: Hilda R. Rolf and her sisters heretofore named, with the husband of Johanna Ebert; and the provision as to receiving other obligations for the debt has to do with the above named "debtor," to-wit, the applicants, as does the word "creditor," throughout the instrument signed.

In our opinion the signed statement of David D. McGinnis to the commissioner did not contemplate the further obligation for the remainder of the $6500 note by one, who, although jointly liable on the $6500 note being released, was not a party to the loan agreement with the bank, no part of whose property was being offered as security therefor, was to receive no part of the proceeds of the new bank loan, and as to whom there is no showing that the borrowers or their property were to become in anywise further obligated on either note.

Defendants cite cases from other jurisdictions wherein holdover obligations in Federal loan transactions have been held invalid, but in all of them they were the obligations of the borrower, directly or indirectly, and involved either liability on his part of his property. In some of the cases cited the borrower directly entered into the secret obligations, in others indirectly, and in others the property and credit acceptability of the borrower were involved.

In International Harvester Co. v. Young, 288 Mich. 436, 285 N. W. 12, cited by defendants, the holder of a chattel mortgage on farm implements agreed with the Federal Land Bank of St. Paul to accept $1000 for his $2800 mortgage out of a proposed loan for the benefit of creditors, and thereafter obtained a bill of sale from the

borrower, and, in turn, sold the implements to the sons of the borrower, taking back an additional $900 note and chattel mortgage, leaving the possession in the borrower. This was held to be an evasion of the Federal laws in question and the second note and chattel mortgage were held invalid.

In May v. Whitbeck, 111 Mont. 568, 113 P. (2d) 332, also cited, the borrower, a farmer, agreed to pay the creditor in full after the creditor's participation in composition agreements with the Federal Land Bank wherein the creditor represented his claim to be $1250, concealing the fact that $500 of the indebtedness had been shifted to the farmer's son-in-law. It was held that the farmer's indebtedness was not extinguished by the delivery of the note, and that the obligation sued on was in reality that of the borrower. The court found that the agreement further was to the effect that the borrower was to join in the signing of the note if and when the transaction was completed. These and other cases cited are clearly distinguished, in our opinion, from the case at bar. If there be any person other than the borrower, to whom a creditor in such a transaction can turn for reimbursement of the loss sustained, whose continued or renewed obligation to pay the same is not shown to affect the interest of the Federal Land Bank, or the liability or property of the borrower, the Federal act in question could not apply to prevent it.

From the foregoing we conclude that the court erred in its finding that there was no consideration for the note sued upon and erred in giving judgment for the defendants. It is ordered that this cause be reversed and remanded to the trial court with directions to set aside its judgment herein and in lieu thereof to enter judgment for the plaintiff in the principal sum of $1410, together with interest thereon as provided in said note, from August 27, 1935, to date of such entry, plus 10 per cent of the total of said principal and interest for attorneys' fees. All concur.